UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERMAINE WELLS,

        Plaintiff,

v.

HOME DEPOT U.S.A.,

        Defendant.
                              /

No. 08-12135

District Judge Gerald E. Rosen

Magistrate Judge R. Steven Whalen

## **REPORT AND RECOMMENDATION**

Before the Court is Defendant Home Depot, U.S.A.'s *Motion for Summary Judgment* pursuant to Fed. R. Civ. P. 56 (c) [Docket #18], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion be GRANTED in part and DENIED in part as follows:

      1. Defendant's motion as to the ELCRA claim regarding Plaintiff's April, 2006 lateral transfer under should be GRANTED, dismissing this claim with prejudice.

      2. The motion to dismiss the ELCRA claim regarding Plaintiff's August 31, 2007 termination should be DENIED.

      3. The motion to dismiss the PWDCRA claims regarding Plaintiff's August 31, 2007 termination should be DENIED.

      4. The motion to dismiss the claims of Negligent Infliction of Emotion Distress, Intentional Infliction of Emotional Distress, Negligent Hiring, and Negligent Retention should be GRANTED, dismissing these claims with prejudice.

## **I. BACKGROUND FACTS**

On February 13, 2008, Plaintiff, a former employee of Defendant Home Depot U.S.A. ("Home Depot") filed suit in Oakland County Circuit Court, alleging that he was wrongfully transferred and terminated in violation of Michigan's Persons' with Disabilities Civil Rights

Act ("PWDCRA"), M.C.L. 37.1101 *et seq.*; discrimination and retaliation in violation of the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"), M.C.L. 37.2202 *et seq.*; intentional and negligent infliction of emotional distress; negligent hiring; and negligent retention and supervision. *Docket #1.* On May 15, 2008, Defendant removed the case to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §1332. *Id.* Defendant filed the present motion on December 30, 2008.

The Complaint makes the following allegations. Plaintiff was hired by Home Depot in June, 2004 as a "soft flooring" supervisor. *Complaint, ¶*14. First assigned to Defendant's West Bloomfield, Michigan store, Plaintiff received merit pay increases and "quarter awards" over the course of his employment. *Id.* at ¶¶16, 18. As a result of his supervision at the West Bloomfield location, the department experienced increased sales and better organization and motivation. *Id.* at ¶17. Plaintiff also performed supervisory functions in the tile and seasonal decor departments. *Id.* at ¶20. The *Complaint* states that as a result of Plaintiff's job performance, the manager of the West Bloomfield store was "preparing [] Plaintiff to continue to climb the supervisorial ladder." *Id.* at ¶22. Upon being informed that the West Bloomfield store was closing, Plaintiff applied for a position at Home Depot's Pontiac location and on June 27, 2005 was hired as a flooring and tile supervisor at his previous salary. *Id.* at ¶23.

Upon beginning work at the Pontiac location, Plaintiff discovered that the flooring department was "in very bad shape," with "cluttered" aisles, a surplus of stock, and poor sales. *Id.* at ¶24. Although twelve associates were assigned to the flooring department, Plaintiff notes that they were continually "sent to assist various other departments" without informing him. *Id.* at ¶25. The store's management staff was unresponsive to his complaints and "humiliated and harassed" him after taking he took his concerns to District Manager

Dave Dawber. *Id.* at ¶¶26-27. The store's human resource manager, Mysti Mohammad likewise ignored his complaints. *Id.* at ¶28. In April, 2006, Plaintiff, an African-American male, was transferred to the plumbing department without notice. *Id.* at ¶29. His vacated position in the flooring department was filled by a Caucasian female. *Id.* at ¶¶31-32. The flooring supervisor replacing him soon received additional staff, a show room redesign, and frequent assistance from the District Manager. *Id.* at ¶33.

Despite knowing "nothing" about plumbing, Plaintiff was able to increase sales numbers in his new department, resulting in the Pontiac store achieving the second highest ranking in its district multiple times. *Id.* at ¶30. His successful supervision of the plumbing department and requests for support were "totally ignored" by the Pontiac store managers. *Id.* at ¶34. As a result of workplace stress, Plaintiff "became both emotionally and physically ill," requiring hospitalization. *Id.* at ¶35. On December 4, 2006, he was threatened with termination if he did not agree to take a sick leave. *Id.* Despite the fact that Plaintiff's December 4 to December 19, 2006 leave was approved by a physician, Plaintiff received a demerit point for his leave time. *Id.* at ¶37. As a result of workplace stress, Plaintiff was hospitalized several times in January, 2007 and took a second leave between February 23, and May 16, 2007. *Id.* at ¶¶38-39.

Following his return to work, "a key carrying manager" at the Pontiac store spoke to Plaintiff "in a racially biased manner." *Id.* at ¶42. Plaintiff made a complaint to management but did not receive a response. *Id.* On July 11, 2007, Plaintiff received additional demerit points for forgetting to "punch in" after lunch and on another occasion for failing to show up for work although he had previously informed management that he had received a court summons for the day in question . *Id.* at ¶43. Plaintiff was terminated on August 31, 2007. *Docket #18,* Exhibit 14. Plaintiff, represented at the time the suit was filed, but now

proceeding *pro se,* alleges severe emotional distress as a result of his termination. *Complaint,* at ¶50.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

## III.  ANALYSIS[1]

---

[1] While the *Complaint* includes allegations of retaliation in regard to both the ELCRA and the Persons With Disabilities Civil Rights Act ("PWDCRA"), the Defendant's motion does not include arguments for dismissal of either of the retaliation claims. As such, the undersigned declines to address these allegations.

### A. Unlawful Discrimination

An employment discrimination case under ELCRA is analyzed under the same framework as an analogous claim under Title VII. *Sutherland v. Michigan Dept. of Treasury,* 344 F.3d 603, 614 (6th Cir. 2003); *Cox v. Electronic Data Systems Corp.*, 751 F.Supp. 680, 690 (E.D. Mich. 1990); *Nixon v. Celotex Corp.*, 693 F.Supp. 547, 553-54 (W.D. Mich. 1988).

### 1. Direct Evidence

Defendant argues that Plaintiff cannot show direct evidence of discrimination. *Defendant's Brief* at 11. Addressing Plaintiff's allegation that "a key carrying manager" addressed Plaintiff "in a racially biased manner, Defendant contends that because the employee in question played no part in any decisions related to Plaintiff's employment, the direct evidence claim is dismissible. *Id.*; *Complaint* at ¶42, *Docket #40* at pg. 77.

"In discrimination cases, direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 926 (6th Cir.1999); *see also Sniecinski v. Blue Cross & Blue Shield,* 469 Mich. 124, 132-133, 666 N.W.2d 186, 192 (Mich.2003). "A direct evidence claim may be supported by more generalized evidence, so long as the evidence when taken as a whole requires the conclusion that the defendant's discriminatory animus was a motivating factor in the adverse employment action." *Conti v. American Axle and Mfg., Inc.,* — F 3d. — , 2009 WL 1424371, * 9 (6th Cir. 2009). In a case of involving direct evidence, "negative statements and racial slurs are sufficient to establish a prima facie case and survive summary judgment even if those comments were not directed at or made about the plaintiff directly." *Conti,* 2009 WL 1424371 at *9.

Plaintiff has testified that during the incident in question a supervisor, John Sprague,

-5-

and he quarreled about Sprague's moving of merchandise from where it had been placed by Plaintiff. *Plaintiff's Deposition, Docket # 18,* Exhibit 40 at pgs. 50-51.[2] The incident culminated in Sprague, referencing Plaintiff's recent return from the stress leave, opining that Plaintiff was "stupid." *Id.* Plaintiff believed that the name-calling had racial overtones based on overhearing an earlier conversation between Sprague and other coworkers in which Sprague opined that "blacks should stay in their own area and . . . women should stay in the [k]itchens." *Id.,* at pgs. 46-50.

Sprague's alleged statements are certainly distasteful. Nonetheless, Plaintiff's "direct evidence" claim is defeated by his failure to even allege that Sprague played any part in the decision to fire him. "[C]omments made by individuals who are not involved in the decision-making process regarding the plaintiff's employment do not constitute direct evidence of discrimination." *Carter v. University of Toledo,* 349 F.3d 269, 273 (6th Cir. 2003). While Plaintiff has stated that Sprague was not just a coequal department supervisor, but "a key carrying supervisor" with additional responsibilities, *Docket #18,* Exhibit 40 at pg. 47, he acknowledged that he was not under Sprague's supervision. *Id.* at pg. 77. Apparently acknowledging that Sprague played no role in his termination, Plaintiff testified that he reported to an assistant store manager, Brian Cicirski, who worked directly for the store's manager, Paul Laczynski. Thus, Sprague's remarks do not constitute direct evidence of

---

[2] Plaintiff appeared at his deposition without counsel. While this certainly does not entitle the Plaintiff to any preferential or "kid glove" treatment, and while his failure to obtain substitute counsel is perhaps frustrating, I am compelled to note that the deposition transcript shows an inappropriately intimidating and insulting attitude, and a disturbing lack of basic civility on defense counsel's part. For example, Counsel told Plaintiff he could "thank himself" for his current financial devastation. *Wells Deposition* at 181; he twice told Plaintiff to "shut up" *id.*, 252, 265; he suggested that Plaintiff might be charged criminally, *id.*, 157; and he called the Plaintiff a liar ("Mr. Wells, you are a liar, okay"). *id.,* 260. It is unlikely that counsel would have engaged in this conduct if Plaintiff had an attorney present. Counsel is reminded that this Court's Civility Principles apply to him regardless of whether or not an opposing party is represented by counsel.

discrimination.

### 2. Circumstantial Evidence

Defendant argues that Plaintiff cannot establish a *prima facie* case of illegal discrimination in either his transfer from the flooring to plumbing department or the August 31, 2007 termination. *Defendant's Brief* at 12.

As discussed above, in regard to the allegations related to his co-supervisor John Sprague, Plaintiff has offered no evidence that anyone in a decision-making position expressly stated a desire to remove, demote or stymie the career prospects of him or any other employee based on race or gender. The remainder of Plaintiff's racial and gender discrimination claims are based on circumstantial evidence. Accordingly, the burden-shifting approach, first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 37 L.Ed.2d 668 (1973), applies. *See also Johnson v. Kroger Co.*, 319 F.3d 858, 865-66 (6th Cir. 2003).[3] Under that framework, the Plaintiff must present a prima facie case of unlawful discrimination. If he can do so, the burden shifts to the Defendant to "articulate some legitimate, nondiscriminatory reason" for taking the challenged action. *Johnson v. University of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000).[4] If the Defendant satisfies that burden, the Plaintiff must then prove, by a preponderance of the evidence, that the proffered reason for the Defendant's actions is not the true reason, but rather a pretext for

---

[3] An employment discrimination case under ELCRA is analyzed under the same framework as an analogous claim under Title VII. *Sutherland v. Michigan Dept. of Treasury,* 344 F.3d 603, 614 (6th Cir. 2003). ;*Cox v. Electronic Data Systems Corp.*, 751 F.Supp. 680, 690 (E.D. Mich. 1990); *Nixon v. Celotex Corp.*, 693 F.Supp. 547, 553-54 (W.D. Mich. 1988).

[4] This is a burden of production. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 868 (6th Cir. 2001).

discrimination.

In order to establish a prima facie showing of racial discrimination, Plaintiff must introduce sufficient evidence that (1) he was a member of a protected class, (2) he suffered an adverse employment action, (3) he was qualified for the position, and (4) the adverse action was taken under circumstances giving rise to an inference of unlawful discrimination, *i.e.*, "treated differently from similarly situated individuals outside of [the] protected class." *Smith v. City of Salem, Ohio,* 378 F.3d 566, 570 (6th Cir. 2004)(*citing Perry v. McGinnis,* 209 F.3d 597, 601 (6th Cir.2000)); *McDonnell Douglas, supra,* 411 U.S. at 802, 1824.

### a. Transfer From the Flooring to the Plumbing Department

Defendant argues that Plaintiff cannot show that his "intra-store" departmental lateral transfer from flooring to plumbing was an "adverse action." *Defendant's Brief* at 12. I agree. Plaintiff, although noting that he went from supervising 13 people in flooring to two or three in plumbing, admitted that the transfer was lateral and further, that upon transferring, he received a pay increase from $17.94 to $18.30 per hour. *Docket #18,* Exhibit 40 at pgs. 77, 81-82. Plaintiff's own perception that the move was an unfavorable is insufficient to establish adverse action in a disparate treatment claim. *Policastro v. Northwest Airlines, Inc.,* 297 F.3d 535, 539 (6th Cir. 2002). Therefore, because Plaintiff cannot show a prima facie case regarding his transfer to the plumbing department, Defendant is entitled to summary judgment on that particular claim.

### b) August 31, 2007 Termination

In regard to Plaintiff's termination, Defendant also argues that he cannot establish the elements of a disparate treatment claim. *Defendant's Brief* at 12-14. Conceding the first and

-8-

seconds prongs of a *prima facie* case, Defendant admits that Plaintiff is a protected class member and that his termination constitutes an adverse action. *Id.* at 12. However, Defendant contends first, that Plaintiff's "violations of the attendance guidelines" shows that he was not qualified for his position; and second, that he cannot show that similarly situated individuals outside the class were treated differently. *Id.* at 12-13. Citing Home Depot's attendance policy manual which states that an employee may be terminated upon accumulating 10 or more demerit points, Defendant contends that at the time of the termination, Plaintiff had received a total of 14 points between August 13, 2006 and August 24, 2007. *Id.* at 4.

Home Depot's *Guidelines for Attendance and Punctuality for Hourly Store Associates* lists the number of points assigned for various attendance infractions: "missed punch' or "tardy beyond 7 minutes - one point; unexcused absence - two points; unexcused absence on weekends or holidays - three points; and "no call/no show" - five points. *Docket #18,* Exhibit 29. Defendant states that Plaintiff accumulated six points between August and December, 2006 as a result of three attendance violations. *Defendant's Brief* at 4. In addition, Defendant contends that Plaintiff received one point for a June 23, 2007 tardy; five points for a July 11, 2007 "no call/no show;" one point for failing to take a lunch on July 16, 2007; and one point on August 24, 2007 for a tardy. *Id.*

At present, Defendant cannot show as a matter of law that Plaintiff was justifiably issued over 10 points between August 13, 2006 and August 24, 2007. Even assuming that Defendant can show legitimate grounds for the six points issued between August and December, 2006 and the June through August, 2007 tardy and "failure to take a lunch" points, a question of fact remains as to whether non-discriminatory grounds existed for assigning him five points for the July 11 "no call/no show."

Plaintiff, acknowledging that he had been originally scheduled to work between 2 and 11 p.m. on July 11, 2007, has stated that he was subpoenaed to testify the same day in a state district court on behalf of his autistic son who had been charged with assault. *Docket #18,* Exhibit 40 at pgs. 257-259. Plaintiff testified that upon receiving the subpoena a few days in advance of the hearing, he informed an assistant store manager, Brian Ciecirski that he would be unable to work at all on July 11. *Id.* at pgs. 262, 285. According to Plaintiff's account, Ciecirski indicated that he would arrange to have an associate from the Garden Department fill in for Plaintiff for the entire shift. *Id.* at pgs. 285, 290-291, 299, 309-310. Plaintiff disputes Defendant's account that he originally informed Ciecirski that he would go to work after the hearing ended to complete his shift. *Id.,* Exhibit 12. He notes that although he provided Defendant with a time stamped document from the court showing that the hearing ended at 4:06 p.m., he ended up leaving the judge's chambers after 6:00 p.m. because the judge "specifically wanted to talk to [his] son." *Id.,* Exhibit 40 at pgs. 296, 305.

Home Depot's disciplinary notice assessing the five attendance points characterizes the work absence differently, stating that although Plaintiff telephoned the store on the day of the hearing, informing an assistant store manager who picked up the telephone, Ed Olah, that he would be late, he never showed up for any portion of the shift. *Id.,* Exhibit 12. However, at his deposition, Plaintiff repeatedly disputed this account. Again testifying that he informed Ciecirski of the absence several days earlier, he stated that he called the store at 12:00 p.m. on July 11 with the assumption that Ciecirski had found a replacement as promised:

> "The purpose of [the July 11th] call was to find out who[] the associate was going to be coming from the Garden Department so I can relay a message to him or her as far as things I wanted . . . to get accomplished, so I wanted to let him or her know where that board was and check off the things they had accomplished with their initial."

-10-

*Id.,* Exhibit 40 at pgs 286-287.  Plaintiff stated that Ed Olah responded that "there's no one in [plumbing]." *Id.* at pg. 287.  Plaintiff, telling Olah that he had already told Ciecirski that he would be out for the day, was informed by Olah that "[Ciecirski] is not here today and there's no one within this department and I have no coverage and there's no one in Garden." *Id.*  Plaintiff testified that he responded to Olah by reiterating that he had a court date but told Olah  "if I can get there, I'll try my best to get there." *Id.*   Plaintiff's *written* account of the day's events also states that he informed Ciecirski of his need to miss work  prior to July 11. *Id.,* Exhibit 30.  Although the  five point demerit was assessed on the purported basis that Plaintiff did not come to work, as promised, after leaving court at "4:06 p.m," Plaintiff's testimony and written statement create questions of fact as to whether Plaintiff' absence for the entire shift was excused by Ciecirski days before and alternatively, whether Plaintiff's 12:00 p.m. statement to Olah that although he would not be available to work at 2:00 p.m., he would "try" to get to work before the end of the shift amounted to a "no call/no show" as defined by Defendant's attendance policy.  *Id.,* Exhibit 12.

The significance of whether the five demerit points were justifiable cannot be overstated.  Minus the July 11, 2007 five point assessment, Plaintiff would have accumulated only nine points for the 12-month period at issue, placing him below the 10 points needed to justify a termination on the basis of attendance violations.  As such, Defendant cannot show as a matter of law that Plaintiff was not qualified for his position.  Likewise, because Defendant would surely argue that it was not its regular policy to discharge employees for attendance violations of less than ten points (including similarly situated individuals outside the protected class) Plaintiff has established the elements of the disparate treatment claim.

Next, Defendant argues that even if Plaintiff can establish the elements of a

discrimination claim, legitimate, non-discriminatory reasons exists for the termination. *Defendant's Brief* at 13-15.  Defendant relies exclusively on Plaintiff's alleged attendance policy violations to justify the dismissal.  However, the above testimony and documents also raise a question of fact as to Defendant's stated justification for the termination, *i.e, that* Plaintiff received over 10 attendance demerits within a 12-month period. As a matter of law, Defendant has not met its burden of production to show legitimate, non-discriminatory reasons for Plaintiff's termination.

Further, even assuming that Defendant's contention that Plaintiff accrued over 10 demerits within 12 months amounts to a facially legitimate reason for his discharge, a question of fact remains as to whether Defendant's purported reasons for the termination were pretextual and that discriminatory animus was indeed a motivating factor in the discharge. *Lytle v. Malady,* 458 Mich. 153, 175-176, 579 N.W.2d 906, 915 - 916 (1998)(circumstantial evidence "sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action."). *Manzer v. Diamond Shamrock Chemicals Company*, 29 F.3d 1078, 1083 (6th Cir. 1994) sets forth three ways a plaintiff can avoid summary judgment on the third prong of *McDonnell-Douglas*:

> "To make a submissible case on the credibility of his employer's explanation, the plaintiff is 'required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate his discharge, or (3) that they were *insufficient* to motivate discharge'" (emphasis in original)(internal citations omitted).

As to the first showing, Plaintiff has offered testimony that because the July 11, 2007 absence was approved, Defendant's reasons for assessing the five-point demerit have no basis in fact.  In establishing the second reason, the plaintiff must show that "the sheer weight of the circumstantial evidence of discrimination makes it more likely than not that the

-12-

employer's explanation is a pretext, or coverup." *Id.*, 29 F.3d at 1084 (internal citations removed). Plaintiff's testimony that he informed his supervisor of his need to attend the July 11, 2007 court hearing soon after being served with the subpoena and the later-submitted court-stamped document[5] constitutes persuasive circumstantial evidence supporting the theory that Defendant's purported reason for the firing is not credible.

The third prong of *Manzer* may be shown by "evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends." *Id.* At this point, Plaintiff has not provided any legally admissible evidence that employees with 14 or more attendance demerits were permitted to keep their jobs. Plaintiff testified that he was informed by a white hourly employee that she had received 16 attendance demerits but had not been terminated, *Docket #18,* Exhibit 40 at pg. 331, and reported that a similarly-situated non-protected class supervisor's demerit attendance points "disappear[ed]" after he made a complaint. *Id.* at pg. 330. These statements, however, are inadmissible as hearsay.

Nevertheless, the *Manzer* test is phrased in the disjunctive, and Plaintiff has satisfied at least two out of the three factors for showing pretext. Defendant is not entitled to summary judgment on this claim.

### B.  Disability

Defendant contends next that Plaintiff cannot establish a *prima facie* case of discrimination under the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"). *Defendant's Brief* at 15-18. Arguing that Plaintiff is unable to show either that he was fired

---

[5]Defendant's Exhibit 12 shows that Plaintiff submitted a court stamped document to his supervisors showing that he had been in court on the day in question.

because of a disability, or more fundamentally, that he experienced a disability at the time of his termination, Defendant again submits that Plaintiff was dismissed for non-compliance with the attendance policy.  *Id.*

In pursuing claims under PWDCRA, the plaintiff must show "(1) that he is [disabled] as defined in the act, (2) that the disability is unrelated to his ability to perform his job duties, and (3) that he has been discriminated against in one of the ways delineated in the statute."(internal citations omitted). *Peden v. City of Detroit,* 470 Mich. 195, 204, 680 N.W.2d 857, 863 (2004).

First, Defendant's argument that Plaintiff was not disabled within the meaning of the act is without merit.  Under  PWDCRA, a disability is defined as follows:  "A determinable physical or mental characteristic  . . . [which] substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position. . . . (ii) a history of [such a] determinable physical or mental characteristic ..."  *Peden*  at 204, 680 N.W.2d at 863 (*citing* M.C.L. 37.1103(d))(internal citations omitted).

Plaintiff's well documented history of depression and anxiety, requiring a four month medical leave including hospitalization, ending on May 16, 2007 (approximately three months before his termination) constitutes a disability.  M.C.L. 37.1103(d).  Further, the fact that despite his mental health history, he was released to return to work without restrictions does not defeat his disability claim.  *Docket #24.*  "[L]ike the ADA, the PWDCRA generally protects only against discrimination based on physical or mental disabilities that substantially limit a major life activity of the disabled individual, *but that, with or without accommodation, do not prevent the disabled individual from performing the duties of a particular job*."  *Peden,*

at 204-205, 680 N.W.2d at 863 (emphasis added). "Once the plaintiff has proved that he is a 'qualified person with a disability' protected by the PWDCRA," he must demonstrate that the defendant took adverse action on the basis of the disability. *Id.,* at 205, 680 N.W.2d at 864 (*citing* M.C.L. 37.1202). Pursuant to M.C.L. 37.1202(b), a termination constitutes an adverse action. Consistent with the tripartite analysis set forth in *McDonnell Douglas*, the defendant must then provide non-discriminatory reasons for the adverse action. *Id.* (*citing Kerns v. Dura Mechanical Components, Inc.,* 242 Mich.App. 1, 12, 618 N.W.2d 56 (2000)).

Defendant again contends that "Plaintiff's termination was due solely to his unexcused absences resulting in attendance points, and not because of any other reason." *Defendant's Brief* at 18. Consistent with the ELCRA discussion, *supra,* Defendant is unable to meet its burden of showing non-discriminatory reasons for the termination - even if for the sake of argument, the Court concedes that all of the attendance demerit points except the July 11, 2007 five point penalty were justifiably issued. Alternatively assuming that Defendant has met its burden of production, at the third prong of the *McDonnell* analysis, Plaintiff can show that a question of fact remains as to whether Defendant's purported reasons for his termination were pretextual.

Defendant contends that it "liberally granted Plaintiff excused absences and leave periods for the myriad of his personal issues throughout his employment," noting that it was "hardly the conduct of an employer that wishes to discriminate against an employee because of a disability." *Id.* However, the fact that Plaintiff had recently applied for and received leave time for family and health issues neither strengthens nor weakens Defendant's argument that the August 31, 2007 termination was non-discriminatory.[6]

---

[6]

Further, Plaintiff's account of his altercation with John Sprague, discussed *supra,* in which Sprague allegedly called Plaintiff "stupid," suggests that Plaintiff's medical leave

**D. State Law Claims**

**1. Negligent and Intentional Infliction of Emotional Distress**

I agree that Plaintiff's claims of negligent and intentional infliction of emotional distress are subject to dismissal. A claim of negligent infliction of emotional distress ("NIED") must include the following elements:

> "(1) serious injury threatened or inflicted on a person, not the plaintiff, of a nature to cause severe mental disturbance to the plaintiff, (2) shock by the plaintiff from witnessing the event that results in the plaintiff's actual physical harm, (3) close relationship between the plaintiff and the injured person (parent, child, husband, or wife), and (4) presence of the plaintiff at the location of the accident at the time the accident occurred or, if not present, at least shock 'fairly contemporaneous' with the accident."

*Aureus Holdings, Ltd. v. City of Detroit,* 2006 WL 1547639, *9, FN26 (E.D.Mich.,2006) (Cohn, J.) (*citing Hesse v. Ashland Oil, Inc.,* 466 Mich. 21, 34, 642 N.W.2d 330, 337 (2002)). The Complaint has failed to meet even one element of a NIED claim.

To establish a Michigan common law claim of *intentional* infliction of emotional distress ("IIED"), a plaintiff must show "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Graham v. Ford*, 237 Mich.App. 670, 674, 604 N.W.2d 713, 716 (1999). *See also Roberts v. Auto-Owners Insurance Co.*, 422 Mich. 594, 374 N.W.2d 905 (1985). Liability under this theory requires that the conduct complained of "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and

---

created resentment - at least among his coworkers. *Docket #18,* Exhibit 16. Plaintiff complained that Sprague allegedly responded to his concern that merchandise in the plumbing department had been moved by saying "no one has to tell you any thing (sic). . . . [Y]ou have been gone for three months and you are not going to come back and say any thing (sic)." *Id.*

utterly intolerable in a civilized community." *Graham*, 237 Mich.App. at 674, 604 N.W.2d at 716. This is a demanding standard: It is not sufficient to show that the defendant acted tortiously, intentionally, or even criminally. *Id.* The test has been described as whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Roberts*, 422 Mich. at 603, 374 N.W.2d at 909. While Plaintiff alleges emotional distress, the claims that he was terminated on the basis of his race and/or disability, while reprehensible, does not amount to outrageous behavior.

### 2. Negligent Hiring and Negligent Retention and Supervision

I also agree that Plaintiff claims of negligent hiring and negligent retention should be dismissed. Because Plaintiff's claims "[are] based on the alleged harassment, discrimination, or retaliation faced by plaintiff in the workplace, [he] cannot establish an independent claim for negligence because the CRA [Civil Rights Act] and and WPA [Whistleblowers' Protection Act] provide the exclusive remedy for such conduct." *Johnson v. Millennium Treatment Services*, L.L.C. 2007 WL 1263981, *5 (Mich.App.2007)(*citing McClements v. Ford Motor Co,* 473 Mich. 373, 382-383; 70 N.W. 2d 166, (Mich.App.2005); *Driver v. Hanley,* 207 Mich.App 13, 18; 523 N.W. 2d 815 (1994)). As such, these claims are barred.

### IV.  CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #18] be GRANTED IN PART AND DENIED IN PART, as follows:

1. Defendant's motion as to the ELCRA claim regarding Plaintiff's April, 2006 transfer should be GRANTED, dismissing this claim with prejudice.

2.  The motion to dismiss the ELCRA claim regarding Plaintiff's August 31, 2007 termination should be DENIED.

3.  The motion to dismiss the PWDCRA claims regarding Plaintiff's August 31, 2007 termination should be DENIED.

4.  The motion to dismiss the claims of Negligent Infliction of Emotion Distress, Intentional Infliction of Emotional Distress, Negligent Hiring, and Negligent Retention should be GRANTED, dismissing these claims with prejudice.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue

contained within the objections.

                                        s/R. Steven Whalen
                                        R. STEVEN WHALEN
                                        UNITED STATES MAGISTRATE JUDGE

Dated: August 20, 2009

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 20, 2009.

                                        s/Susan Jefferson
                                        Case Manager