UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERMAINE WELLS,

    Plaintiff,

v.

            Case No. 08-12135
            Hon. Gerald E. Rosen
            Magistrate Judge R. Steven Whalen

HOME DEPOT U.S.A., INC.,

    Defendant.
_____/

**OPINION AND ORDER REGARDING**
**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on    September 22, 2009

PRESENT: Honorable Gerald E. Rosen
                      Chief Judge, United States District Court

On August 20, 2009, Magistrate Judge R. Steven Whalen issued a Report and Recommendation ("R & R") recommending that the Court grant in part and deny in part a motion for summary judgment filed by Defendant Home Depot U.S.A., Inc. Defendant filed objections to the R & R on September 4, 2009, arguing that its summary judgment motion should be granted in its entirety. Plaintiff Jermaine Wells, proceeding *in pro per*,[1] filed a response to Defendant's objections on September 8, 2009, and Defendant filed a reply in further support of its objections on September 14, 2009. For the reasons set forth

---

[1] Plaintiff initially was represented by counsel, but his attorney was permitted to withdraw by order dated August 8, 2008, and he has since been unable to secure substitute counsel.

below, the Court finds merit in some (but not all) of Defendant's objections, and concludes that Defendant is entitled to summary judgment in its favor on all of Plaintiff's claims.

As its first objection to the R & R, Defendant contends that the Magistrate Judge's "findings of fact" are erroneous in one key respect.[2] Specifically, in addressing the "pretext" phase of the *McDonnell Douglas* inquiry that governs Plaintiff's discrimination and retaliation claims, the Magistrate Judge found that there were genuine issues of fact as to whether Defendant's stated reason for Plaintiff's discharge was pretextual, where Plaintiff's deposition testimony called into question whether Defendant had properly assessed points against his attendance record for one particular absence on July 11, 2007. (*See* R & R at 10-13.) As observed in the R & R, Defendant's handling of this absence played a crucial role in Plaintiff's discharge a short time later, because the five points assessed against his record for this absence placed him over the ten-point limit that warranted a discharge under Defendant's attendance policy. (*See id.* at 11-12.) Defendant, however, disputes the factual predicate for the Magistrate Judge's analysis on this point, arguing that Plaintiff's deposition testimony fails to support the proposition that his July 11, 2007 absence should have been deemed excused rather than a "no call/no show."

---

[2]Because the R & R addresses a summary judgment motion, there was no occasion for the Magistrate Judge to make "factual findings." Rather, the Magistrate Judge properly reviewed the record in a light most favorable to Plaintiff as the non-moving party.

This objection lacks merit. In deciding a summary judgment motion, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006). While Defendant points to portions of Plaintiff's deposition testimony where he offers somewhat vague and shifting accounts of the events surrounding his July 11, 2007 absence,[3] Plaintiff nonetheless testified quite directly and clearly, at more than one point during his deposition, that he secured the advance approval of his supervisor, Brian Ciecirski, to be absent from work that day. (*See* Defendant's Summary Judgment Motion, Ex. 40, Plaintiff's Dep. at 262, 285-86, 290-91.) In the course of this testimony, Plaintiff stated that he told his supervisor "that I needed to take this day off," that he needed coverage for "[t]he whole shift" that day, and that his supervisor responded that he would "get someone from [another department] to take the shift." (*Id.* at 285, 290, 291.) Under this record, a trier of fact could properly conclude that Plaintiff sought and obtained advance approval for his July 11, 2007

---

[3] Unfortunately, Plaintiff was no longer represented by counsel at the time of his deposition, resulting in somewhat muddled testimony and confusing exchanges between Plaintiff and defense counsel that all too often devolved into argument and name-calling. While the Court recognizes the challenges of deposing an unrepresented party — particularly where, as here, this party often eschewed short and straightforward answers in favor of more expansive testimony that was not necessarily responsive to the question at hand — the Magistrate Judge properly observed that defense counsel nonetheless was obligated to adhere to this Court's Civility Principles, and that his conduct sometimes fell short of these standards in the course of Plaintiff's deposition. (R & R at 6 n.2.) Although defense counsel take issue with this portion of the R & R, (*see* Defendant's Objections at 19 n.6), the Court's independent review of the deposition transcript leads it to concur in the Magistrate Judge's observations, where defense counsel occasionally "took the bait" of Plaintiff's argumentative or non-responsive testimony and responded in kind, rather than returning the focus to the question at hand. Indeed, as noted below, defense counsel has exhibited conduct of a similar sort in his objections to the R & R.

absence, such that this absence should not have been counted as a "no call/no show" under Defendant's attendance policy.

Nonetheless, even assuming that Defendant erroneously applied its attendance policy by assessing five points against Plaintiff's attendance record as a result of his July 11, 2007 absence from work, Defendant challenges the Magistrate Judge's determination that this error, standing alone, provides a sufficient basis for concluding that the company's stated reason for terminating Plaintiff's employment was a pretext for unlawful discrimination.[4] As Defendant observes, Plaintiff's claims of race and sex discrimination in this case have been brought under Michigan's Elliott-Larsen Civil Rights Act (the "Elliott-Larsen Act"), Mich. Comp. Laws § 37.2101 *et seq.,* and this Court has previously explained that Michigan law differs from federal law as to the sort of showing that a plaintiff must make in order to establish that his employer's stated, non-discriminatory reason for an adverse employment action was a pretext for unlawful discrimination. *See Millner v. DTE Energy Co.,* 285 F. Supp.2d 950, 970 & n.20 (E.D. Mich. 2003); *United States ex rel. Diop v. Wayne County Community College District,* 242 F. Supp. 2d 497, 514-15 & n.17 (E.D. Mich. 2003). In particular, the Michigan

---

[4]Defendant has advanced a similar challenge to the Magistrate Judge's recommended disposition of the "qualified" prong of Plaintiff's *prima facie* case of discrimination. In light of the Court's conclusion that Plaintiff's discrimination claims fail on other grounds, it need not address this objection, but instead assumes for present purposes that Plaintiff has established a *prima facie* case of discrimination. It is worth nothing, however, that in its underlying summary judgment motion, Defendant challenged Plaintiff's showing on the "qualified" element of his *prima facie* case solely on the ground that his attendance violations rendered him unqualified. (Defendant's Motion, Br. in Support at 12-13.) As explained, there are issues of fact as to the validity of at least one of the attendance violations assessed against Plaintiff.

4

courts have construed the Elliott-Larsen Act as mandating that "disproof of an employer's articulated reason for an adverse employment decision defeats summary disposition only if such disproof also raises a triable issue that discriminatory animus was a motivating factor underlying the employer's adverse action." *Millner,* 285 F. Supp.2d at 970 (quoting *Lytle v. Malady,* 458 Mich. 153, 579 N.W.2d 906, 916 (1998)). Defendant argues that the record here does not support this requisite showing that its erroneous application of its attendance policy was a pretext *for discrimination.*

The Court agrees. The record in this case is totally devoid of any evidence that any decisionmaker involved in Plaintiff's termination was motivated by impermissible considerations of Plaintiff's race or gender.[5] Accordingly, even assuming that Defendant erred in characterizing Plaintiff's July 11, 2007 absence as a "no call/no show," this conclusion would serve only to rebut the factual basis for the reason given by Defendant for Plaintiff's discharge — *i.e.,* his accumulation of more than ten points for violations of the company's attendance policy. Nothing in this rebuttal, however, would tend to establish the *further* — and, under the decisions of the Michigan courts, necessary — proposition that "discriminatory animus was a motivating factor" in Defendant's

---

[5]As noted in the R & R, while Plaintiff testified about distasteful remarks made by co-worker John Sprague, at least one of which made reference to race, there is no evidence in the record that Sprague played any part in the decision to terminate Plaintiff's employment. (*See* R & R at 5-6.) The record is even more scarce as to evidence of gender discrimination. This claim appears to rest solely on the fact that a woman was assigned to Plaintiff's former position when he was transferred to the plumbing department in April of 2006. Yet, as the Magistrate Judge correctly concluded, Plaintiff has no viable claim arising from this transfer, since his lateral transfer does not qualify as an adverse employment action. (*See id.* at 8.)

5

erroneous application of its attendance policy." *Lytle,* 579 N.W.2d at 916. "In other words, plaintiff must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for [race] or sex discrimination." *Lytle,* 579 N.W.2d at 916.

    The record here would not permit a trier of fact to make this necessary finding. Under the analogous circumstances presented in *Millner, supra,* this Court explained that a supervisor's "mistake" that led to an allegedly unwarranted reprimand did not establish that the defendant employer's stated reason for this reprimand was a pretext for discrimination. *See Millner,* 285 F. Supp.2d at 970; *see also Town v. Michigan Bell Telephone Co.,* 455 Mich. 688, 568 N.W.2d 64, 72 (1997) (observing that a plaintiff "cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer" (internal quotation marks and citation omitted)). So it is here, where there is no evidence that discriminatory animus played any role in Defendant's arguably erroneous decision to treat Plaintiff's July 11, 2007 absence as a "no call/no show." Under the record presented in this case, it would be equally a matter of speculation to conclude, for example, that this error resulted from an honest miscommunication between Plaintiff and his supervisor, or that it was the product of some sort of animus, whether based on race or sex (and thus falling within the ambit of the Elliott-Larsen Act) or on some other ground such as personal dislike (which is not reached by the Michigan statute). Consequently, while there clearly is an evidentiary basis for questioning whether Plaintiff should have been

assessed five points for this absence, there is no such evidentiary basis for concluding that Plaintiff's race or gender played any role in this decision. It follows that Defendant is entitled to summary judgment in its favor on Plaintiff's Elliott-Larsen claims of race and gender discrimination.[6]

Next, Defendant objects to the Magistrate Judge's conclusion that Plaintiff established a *prima facie* case of disability discrimination under Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), Mich. Comp. Laws § 37.1101 *et seq.* In so concluding, the Magistrate Judge cited the PWDCRA's definition of a "disability" as including a "history" of a condition that meets the statutory definition of a disability. Mich. Comp. Laws § 37.1103(d)(ii). The Magistrate Judge then reasoned that "Plaintiff's well documented history of depression and anxiety, requiring a four month medical leave including hospitalization, . . . constitutes a disability" within the meaning of the PWDCRA. (R & R at 14.) Defendant challenges this finding, arguing that Plaintiff's condition was temporary, and thus cannot qualify as a "disability" under the PWDCRA and the case law construing this statute.

---

[6]In addition, Defendant correctly observes that it was entitled to rely on its mistaken judgment that Plaintiff's July 11, 2007 absence constituted a "no call/no show," so long as its management had an "honest belief" that Plaintiff had not secured advance approval for this absence. *See Majewski v. Automatic Data Processing, Inc.,* 274 F.3d 1106, 1117 (6th Cir. 2001). While Plaintiff testified that he did secure the requisite advance approval, he acknowledged that he did not alert management to this fact when he met with them to discuss this alleged violation of Defendant's attendance policy. (*See* Plaintiff's Dep. at 312-14, 320.) Thus, there is no evidence that the decisionmakers who assessed five points against Plaintiff's attendance record for his July 11, 2007 absence were aware of his claim that he had obtained his supervisor's advance approval for this absence.

7

The Court again agrees with Defendant on this point. The PWDCRA defines a disability as a condition that "substantially limits 1 or more . . . major life activities," Mich. Comp. Laws § 37.1103(d)(i)(A), as well as a "history" of a condition that meets this description, § 37.1103(d)(ii), or "[b]eing regarded as having" such a condition, § 37.1103(d)(iii). In light of the statutory requirement that a condition be "substantially limit[ing]," the Michigan Court of Appeals has held that "an impairment cannot be 'substantial' if it is of a merely temporary nature." *Chiles v. Machine Shop, Inc.,* 238 Mich. App. 462, 606 N.W.2d 398, 409 (1999); *see also Donahoo v. Master Data Center*, 282 F. Supp.2d 540, 550 (E.D. Mich. 2003); *James v. DaimlerChrysler Corp.,* No. 03-73340, 2005 WL 2033538, at *8-*9 (E.D. Mich. Aug. 18, 2005); *Curry v. Cyprian Center, Inc.,* No. 99-71739, 2000 WL 35631027, at *4 (E.D. Mich. Apr. 25, 2000), *aff'd,* 17 F. App'x 339 (6th Cir. Aug. 21, 2001). Under the plain language of the PWDCRA, this applies as well to the "history" prong of the statutory definition of a disability — that is, the impairment in the plaintiff employee's medical "history" must have been "substantially limit[ing]" during the time he suffered from it, and hence this historical condition cannot have been merely temporary. In this case, Plaintiff was on medical leave for a few months in early 2007, but then returned to work with no restrictions on May 16, 2007. This temporary condition does not qualify as a "disability" under any prong of the PWDCRA's definition of that term, and Defendant therefore is entitled to

summary judgment in its favor on Plaintiff's claim of disability discrimination.[7]

Finally, while Defendant acknowledges that it did not expressly address Plaintiff's claims of retaliation in its underlying summary judgment motion, it argues that it nonetheless is entitled to summary judgment in its favor on any such claims Plaintiff might be pursing in this case, where Plaintiff cannot show that Defendant's stated non-retaliatory reason for terminating his employment was a pretext for unlawful retaliation. For the reasons set forth earlier, the Court agrees that the record would not support such a conclusion. *See Minnis v. McDonnell Douglas Technical Services Co.,* 162 F. Supp.2d 718, 738-39 (E.D. Mich. 2001). In addition, upon carefully reviewing Plaintiff's complaint, which was filed while he was still represented by counsel, it is difficult to discern precisely what sort of protected activity Plaintiff might rely upon in support of a claim of retaliation. Neither does Plaintiff's deposition testimony forge any sort of link between any protected activity and his discharge. Consequently, the Court finds that Defendant is entitled to summary judgment in its favor as to any claim of retaliation Plaintiff might be pursuing in this case.

Before leaving this matter, the Court wishes to further address a concern expressed by the Magistrate Judge — namely, that defense counsel's conduct in this litigation has not fully comported with the Civility Principles that govern the conduct of counsel

---

[7]Alternatively, even if Plaintiff had established a *prima facie* case of disability discrimination, he cannot show, for the reasons outlined above, that Defendant's stated reason for terminating his employment was a pretext for discrimination on account of his disability.

9

practicing before this Court. The Magistrate Judge has already noted certain questionable aspects of counsel's performance at Plaintiff's deposition, (*see* R & R at 6 n.2), and the Court concurs in the Magistrate Judge's views on this subject. Yet, far from assuaging these concerns through his subsequent performance in this case, counsel has prepared and submitted objections to the R & R that often seem more designed to attack the competence and analytical skills of the Magistrate Judge than to identify instances of legal error in the R & R. For example, apart from all-too-liberal use of bolding and underlining on virtually every page of the objections, counsel accuses the Magistrate Judge of "serious" errors, of reaching conclusions that are "patently contrary to well-established Michigan law," and of "simply ignor[ing]" the cases cited and arguments advanced in Defendant's underlying summary judgment motion. Parties and their counsel are certainly free to disagree with the conclusions reached by the Magistrate Judge or this Court, but attorneys are obligated under the Civility Principles to do so respectfully. Defense counsel has fallen short of this standard in his objections to the R & R, and is cautioned against filing papers of this sort in his future appearances before the Court.

Accordingly,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's September 4, 2009 objections to the Magistrate Judge's August 20, 2009 Report and Recommendation are SUSTAINED IN PART and OVERRULED IN PART, as set forth in the Court's rulings in this opinion and order. IT IS FURTHER ORDERED that the Magistrate

Judge's Report and Recommendation (docket #24) is ADOPTED to the extent that it recommends that summary judgment be awarded to Defendant on certain of Plaintiff's claims, but is otherwise REJECTED and supplanted by the rulings in the present opinion and order to the extent that it recommends that Defendant's motion for summary judgment be denied. Finally, in light of these rulings, IT IS FURTHER ORDERED that Defendant's motion for summary judgment (docket #18) is GRANTED.

                                        s/Gerald E. Rosen
                                        Chief Judge, United States District Court

Dated: September 22, 2009

**CERTIFICATE OF SERVICE**

I hereby certify that on   September 22, 2009  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:            Charles C. DeWitt, Jr.                            , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:
          Jermaine Wells, 24691 Parklawn, Oak Park, MI 48237          .

                                        s/Ruth A. Brissaud
                                        Ruth A. Brissaud, Case Manager
                                        (313) 234-5137